# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MATTHEW J. MAYO,

                        Plaintiff,

    v.                                            9:13-CV-1240 (FJS/ATB)

T. PHILLIPS, et al.,

                        Defendants.

MATTHEW J. MAYO, Plaintiff, *pro se*
TIMOTHY P. MULVEY, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

     In this civil rights action, plaintiff alleges that, in June 2013, five employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his federal constitutional rights during his confinement at Upstate Correctional Facility ("Upstate") by using excessive force against him and/or by failing to protect him from the use of force by others. (Compl., Dkt. No. 1).[1] Presently before the court is the defendants' amended motion for summary judgment pursuant to Fed. R. Civ. P. 56, filed on July 15, 2014. (Dkt. No. 29). This matter was referred for Report and Recommendation on July 15, 2014 by Senior U.S. District Judge Frederick J. Scullin, Jr., pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

---

[1] Plaintiff's complaint included other civil rights claims under 42 U.S.C. § 1983 against other DOCCS employees, but they were dismissed by Senior District Judge Scullin, *sua sponte*, for failure to state a claim upon which relief could be granted, pursuant to 28 U.S.C. §§ 1915 and 1915A. (12/11/2013 Mem.-Decision and Order, Dkt. No. 4). Some of plaintiff's claims were dismissed without prejudice; but he has not subsequently moved to amend his complaint.

Defendants Labarge and Phillips filed and served a prior, similar summary judgment motion on June 25, 2014. (Dkt. No. 17). After the three other remaining defendants were served in the action, defense counsel requested, and received leave to file the amended summary judgment motion on behalf of all of the remaining defendants. (Dkt. Nos. 26, 28). Plaintiff prepared and submitted a response to the original summary judgment motion on or about July 7, 2014, which was received by the Clerk's Office the day after defendants' amended summary judgment motion was filed. (Dkt. No. 31). The court stated that it would consider plaintiff's response to the first summary judgment motion in connection with the amended motion, but directed plaintiff to file any further response to the amended motion by August 11, 2014. (Dkt. No. 33).[2] Plaintiff missed the original response deadline, but in October 2014 requested, and was granted an extension of time within which to respond to the amended summary judgment motion, until December 3, 2014. To date, plaintiff has not filed any further response to the defendants' amended summary judgment motion.

For the reasons set forth below, this court recommends that defendants' amended summary judgment motion be granted. Plaintiff's remaining claims should be dismissed because no rational fact finder could conclude that he exhausted his administrative remedies, as required before filing an action under 42 U.S.C. § 1983.

---

[2] Both the original and the amended summary judgment motions gave plaintiff appropriate notice regarding his obligation to respond to the motion, pursuant to Fed. R. Civ. P. 56(e) and N.D.N.Y. L.R. 7.1. (Dkt. Nos. 17, 29). The clerk, at the direction of the court, also separately served plaintiff with notice of his obligations to respond to the amended summary judgment motion. (Dkt. Nos. 33, 34).

## FACTS AND CONTENTIONS

Plaintiff alleges that, following his transfer from Clinton Correctional Facility to Upstate on June 3, 2013, he was escorted to his cell at Upstate by defendants Southworth and LaBarge. (Compl., Dkt. No. 1 at 8-9).[3] When they arrived at the cell, plaintiff's cellmate said that, if plaintiff was put in the cell, "there [would] be a fight." (Compl. at 9). After plaintiff asked defendants Southworth and LaBarge why they were putting him in a cell with an inmate who was threatening to fight, defendant Southworth allegedly ran into plaintiff with great force, pushed him into the wall, and then "violently slammed [plaintiff] into the floor," causing him to hit his head and face. (Compl. at 10). Defendant LaBarge punched plaintiff under his left eye. (*Id.*). A few minutes later, two other male correctional officers ran into the cell, grabbed plaintiff roughly by his ankles, hoisted him in the air and "violently" twisted his body. (Compl. at 11). Defendant Phillips then arrived and asked plaintiff if he was ready to comply with orders. (*Id.*).

Plaintiff was roughly escorted to a holding pen, where he was told to strip down to his boxers, and pictures were taken. (*Id.*).[4] During this time, defendants LaBarge and Southworth told defendants Phillips and Rendle about the threats that plaintiff's cellmate had made against plaintiff. (*Id.*). Defendant Phillips and Rendle spoke to plaintiff about the threats, but still ordered that plaintiff be returned to that cell. (*Id.*).

---

[3] Because the pages in plaintiff's complaint are not consecutively numbered, the court will refer to the page numbers reflected in the header placed on the document upon filing by the CM-ECF electronic docketing system.

[4] Plaintiff also was examined by a DOCCS nurse. (Compl. at 16).

3

When plaintiff arrived at the cell, his cellmate allegedly attacked him, starting a fight between them. (Compl. at 11-13). Plaintiff was issued two misbehavior reports relating to the event of June 3, 2013–one relating to his fight with his roommate and one relating to his earlier alleged resistance to being escorted to his cell. (Exs. to Compl. Dkt. No. 1-1 at 32, 38).

Plaintiff alleges that he wrote to Upstate Superintendent Rock "multiple times" about the incidents alleged in the complaint "to no avail." (Compl. at 16-17). Plaintiff also spoke to defendant Rock personally about his problems when defendant Rock was in his housing unit, but defendant Rock told plaintiff that, because plaintiff got himself into trouble with some officers, plaintiff would have to deal with it. (Compl. at 17). Defendant Rock also allegedly told plaintiff that he would stand behind his officers even if he believed that allegations brought against an inmate "are 99.9% false." (*Id.*).

Senior District Judge Scullin, construing plaintiff's complaint liberally, allowed the following claims to proceed after *sua sponte* review: (1) Eighth Amendment excessive force claims against defendants Southworth, LaBarge, and two unidentified correctional officers;[5] (2) Eighth Amendment failure-to-protect claims against

---

[5] Notwithstanding the direction from Senior Judge Scullin to "take reasonable steps to ascertain the identity of any 'John Doe' Defendants named in the complaint," (12/11/2013 Mem.-Decision and Order at 13), plaintiff made no apparent effort to identify any John Doe defendants until October 20, 2014 (Dkt. No. 35). The court denied plaintiff's application to name one of the John Doe defendants, without prejudice, pending the resolution of the amended summary judgment motion to dismiss the remaining claims based on plaintiff's failure to exhaust administrative remedies. (Dkt. No. 36). If Senior District Judge Scullin adopts the recommendations herein, all of plaintiff's remaining claims, including against John Doe defendants, would be subject to dismissal.

4

defendants Phillips and Rendle; and (3) a supervisory claim against defendant Rock that he failed to correct staff wrongdoing after learning of it through reports. (12/11/2013 Mem.-Decision and Order at 5-6, 12-13, Dkt. No. 4). The defendants' summary judgment motion does not address the merits of the remaining claims.[6] As discussed below, defendants contend that plaintiff failed to file or perfect an administrative grievance with respect to any of these claims, and seek summary judgment on that basis.

## DISCUSSION

**I.  Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which

---

[6] The defendant officers, in their contemporaneous reports, acknowledge using only reasonable and necessary force on plaintiff when he resisted escort procedures. (*See* Dkt. No. 1-1 at 6-9, 11-12, 14-20).

5

support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a

6

district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II. Exhaustion of Administrative Remedies

Based on the record discussed below, the court concludes that no reasonable fact finder could conclude that the plaintiff filed or appealed grievances relating to the remaining Eighth Amendment claims in this action. Accordingly this court recommends that those claims be dismissed for failure to exhaust administrative remedies.

### A. Applicable Law

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to

7

establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court held that, in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the superintendent of the relevant facility. *Id*. § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement

8

could be waived or excused.[7] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some discussion.[8] Although the Second Circuit has not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in post-*Woodford* cases. *See, e.g.*, *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009).

### B. Analysis

In his complaint, plaintiff acknowledges that a prisoner grievance procedure was available at his facility, and claims that he filed grievances with respect to the allegations in the complaint. (Compl. at 2). Plaintiff states "I wrote everyone from

---

[7] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

[8] See, e.g., *Newman v. Duncan*, 04-CV-395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 285-86 n.7 (S.D.N.Y. 2009).

9

grievance all the way to Supt. D. Rock. . . . They did nothing . . . ." (*Id.*). Although the plaintiff attached numerous exhibits to the complaint, including use-of-force and other reports, and the disciplinary charges generated on June 3, 2013, he did not attach copies of any documents indicating that he filed grievances relating to the excessive force or failure-to-protect claims stemming from the events of June 3rd. (Exs. to Compl., Dkt. No. 1-1).

In support of both the original and the amended summary judgment motions, defense counsel submitted the Inmate Grievance Summary for plaintiff from Upstate, which shows that he filed only two grievances at that facility. (6/25/2014 Mulvey Affirm. ¶ 2, Dkt. No. 17-4 & Ex. B, Dkt. No. 17-5; 7/15/2014 Mulvey Affirm. ¶ 2, Dkt. No. 29-4 & Ex. B, Dkt. No. 29-5). In those grievances, plaintiff complains about the delays in the hearings relating to the two misbehavior reports issued based on his conduct on June 3, 2014. The grievances make no mention of any use of excessive force by correction officers or their failure to protect plaintiff from an assault by his cellmate. (6/25/2014 Mulvey Affirm., Exs. C & D, Dkt. Nos. 17-6 & 17-7; 7/15/2014 Mulvey Affirm., Exs. C & D, Dkt. Nos. 29-6 & 29-7). Defendants also submitted a declaration from the Assistant Director of the Inmate Grievance Program ("IGP") for DOCCS, who is the custodian of records for CORC, which maintains files of grievance appeals by inmates. (Hale Decl., Dkt. Nos. 17-2, 29-2). According to Ass't Dir. Hale, there was no record that plaintiff appealed any grievance to CORC while he has been in DOCCS custody. (Hale Decl. ¶¶ 8-11 & Ex. A, Dkt. Nos. 17-3, 29-3).

In his response to defendants' first summary judgment motion, plaintiff claims

the he did "follow proper procedures by attempting to 'exhaust all remedies.'" (Pl.'s Dec. ¶ 1, Dkt. No. 31-1). Plaintiff states further: "Multiple grievances had been filed on my behalf, in regards to the unethical conduct that I'd been subjected to at the hands of the defendants, N.Y.S. 'DOCCS' personnel, June-3rd -2013.[9] [However] to no avail, unfortunately, I'd not received a response in well over three (3) months . . . ." (*Id*.).

"Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (*citing, inter alia, Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (plaintiff's allegations that his grievances were misplaced or destroyed by corrections officers ultimately does not relieve him of the requirement to appeal those claims to the next level once it becomes clear that no response is forthcoming)); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281-82 n.8 (N.D.N.Y. 2013) (collecting cases).[10] Plaintiff's conclusory

---

[9] Plaintiff also states, somewhat obliquely, that he had submitted grievances pertaining to "the acts of malicious and violent conduct as well as deliberate indifference that I'd been subjected to by the defendants, 'DOCCS' personnel." (Pl.'s Decl. ¶ 4).

[10] *Cf. Johnson v. Tedford*, 616 F. Supp. 2d 321, 326 (N.D.N.Y. 2007) (Sharpe, J.) ("in light of the Second Circuit's *Hemphill* decision, several Southern District [of New York] cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review"). In this case, unlike *Johnson v. Tedford*, plaintiff has offered no corroboration of his claim that he filed a grievance that was never processed by the IGP. *Johnson v. Tedford*, 616 F. Supp. 2d at 326 (while the court would normally be hesitant to afford weight to plaintiff's assertions that his grievance was never assigned a number or responded to, there is some evidence to support his position in the form of inquiry letters and official responses regarding the grievance at issue).

claim that he filed grievances relating to his Eighth Amendment claims that were ignored by officials at Upstate is insufficient to overcome defendants' summary judgment motion, particularly in light of the documentary evidence that two of plaintiff's grievances relating to the misbehavior reports issued against him on June 3, 2013 were processed by the IGP at Upstate. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

In any event, even if plaintiff had filed a grievance at Upstate related to his excessive force and failure-to-protect claims, he has offered nothing to rebut the documentation from CORC that he never perfected an administrative appeal of any such grievance.[11] "If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA." *Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.).[12]

Finally, plaintiff has offered no evidence to suggest that the grievance process

---

[11] The complaint, quoted above, arguably suggests that plaintiff pursued a grievance to the level of Upstate Supt. Rock, but nowhere does he assert that he appealed any grievance to CORC.

[12] The New York regulations specifically state that if a grievance is not decided within the time limits provided, the inmate may appeal to the next step. 7 N.Y.C.R.R. § 701.6(g)(ii)(2). In *Pacheco v. Drown*, 9:06-CV-20, 2010 WL 144400, at *19 & n.21 (N.D.N.Y. Jan. 11, 2010), U.S. District Judge Glenn Suddaby held that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal may be appealed to the next level, including the CORC, in order to properly complete the grievance process. *Accord, Murray v. Palmer*, 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, *2 & nn. 4, 6 (N.D.N.Y. March 31, 2010).

12

was unavailable to him, that the defendants threatened him or did anything else that should estop them from asserting the defense of failure to exhaust, or that there are any other special circumstances under *Hemphill* and its progeny that would excuse plaintiff's failure to exhaust his administrative remedies. This court concludes that plaintiff has made only conclusory and inconsistent allegations to rebut the documentary evidence offered by the defendants that he did not file grievances or appeals with respect to his excessive force and failure-to-protect claims. Because no rational fact finder could conclude that plaintiff exhausted his administrative remedies, this court recommends that defendants' motion for summary judgment be granted and plaintiff's complaint be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' amended motion for summary judgment (Dkt. No. 29) be **GRANTED**, and that plaintiff's remaining claims in the complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated: January 20, 2015**

Hon. Andrew T. Baxter
U.S. Magistrate Judge